IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**DANNY E. IRBY**                                                                              **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO: 4:03-CV-141-WHB-JCS**

**DR. F. COLE, MAJOR BART GRIMES,
CAPT. MARK ENTERKIN, OFFICER
PATRICK THOMAS, OFFICER JIMMIE
MASON, AND OFFICER JOSEPH FAIRCHILD**                                  **DEFENDANTS**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

THIS CAUSE is before the undersigned United States Magistrate Judge for report and recommendation on the Defendants' Motion for Summary Judgment [#95], filed May 9, 2006. The undersigned has considered the motion, and supporting memorandum [#97], as well as the Plaintiff's "Motion to Deny the Defendants' Motion for Summary Judgment" [#101] and supporting memorandum [#102], filed June 5, 2006. Also considered are the Plaintiff's sworn allegations regarding his claims made at the omnibus hearings conducted in this cause on April 29, 2004, and on March 28, 2006.

### SUMMARY JUDGMENT STANDARD

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings or discovery, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Lynch Properties,*

1

*Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). Once the moving party has satisfied this burden, the non-moving party must go beyond the pleadings and, by its own evidence, whether by affidavits or otherwise, set forth specific facts showing a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431-32 (5th Cir. 1998).

## **DISPUTED AND UNDISPUTED FACTS**

Jurisdiction of this case is based upon 42 U.S.C. § 1983. The Plaintiff contends that he did not receive adequate medical care for his varicose veins and the resulting pain, or his condition described as the absence of lymphatic glands. Some of the facts are undisputed because the parties concede such factual matters, or because the medical records confirm such facts. There is no dispute that the Plaintiff was an inmate and convicted felon at the East Mississippi Correctional Facility in Meridian, Mississippi, during the period at issue, having been transferred there from another Mississippi Department of Corrections facility on January 25, 2002.

The Plaintiff's medical records were introduced into evidence at the omnibus hearing conducted on March 28, 2006, and the Plaintiff made no objection to the accuracy of his records. The records confirm that he had a history of varicose veins at that time he entered EMCF, and he requested a lower bunk. Although the records reflect that the Defendant Dr. Frederick Cole

ordered a lower bunk for him at the time, the Plaintiff contends that he did not receive it until August 4, 2003.  He also was noted to have a history of mental illness and had previously been prescribed the medication Resperidol.  The medication was changed to Seroquel and Benadryl by the EMCF psychiatrist. Dr. Cole completed an intake physical examination on February 12, 2002, and noted that the Plaintiff had "chronic (longstanding) venous stasis of his lower extremities."  Dr. Cole ordered support stockings (TED hose), and these were supplied to the Plaintiff during his incarceration.  The Plaintiff would not always use them, as he contended that hose were the wrong treatment.

The Plaintiff's first complaints were made on June 25, 2002, when he was seen by the nursing staff for fever and for pain and swelling in his left lower leg. After notification to Dr. Cole, the nursing staff provided analgesics and ordered that the Plaintiff remain in bed until Dr. Cole could treat him.  Some eleven hours later, Dr. Cole treated Irby and sent him to the EMCF infirmary for treatment and skilled nursing care.  Dr. Cole diagnosed a localized cellulitis of his leg and ordered intra-muscular injections of antibiotics.  Irby was discharged on June 28, 2002, with a discharge prescription of antibiotics and bed rest. According to Dr. Cole's notes, Irby no longer had fever and had only moderate inflammation upon his discharge; Irby's condition had greatly improved during the treatment.

Irby was readmitted to the infirmary on July 1, 2002, due to a recurrence of the left lower leg swelling. Dr. Cole reported that the swelling was related to lymphedema, and he continued intra-muscular antibiotics. Nurses' notes confirm that Irby was discharged later that day due to his behavior; he was described as "angry and unpredictable." He was placed in regular housing. He was seen by Dr. Cole again on July 15, 2002, for follow-up treatment. His condition was no worse, described as being mild edema of the left foot, ankle, and pre-tibial areas. TED stockings were continued, and the Plaintiff was advised to elevate his left lower extremity as much as possible. Dr. Cole noted that the Plaintiff demanded to be sent to a local hospital for further treatment.

The Plaintiff was again treated by Dr. Cole on July 25, 2002. The records indicate that the Plaintiff had "no complaints" and that his leg looked great. There was no evidence of phlebitis, and he was instructed to wear the TED stockings. On March 26, 2003, the Plaintiff was again seen by Dr. Cole and diagnosed with "chronic venous stasis of both lower extremities below knees." Dr. Cole further reported that Irby refused to wear his TED hose and still demanded to be sent out to the hospital, as he did on July 15, 2002. The report indicates that there was no cardiac, renal, or hepatic failure.

Irby filed this lawsuit on April 9, 2003, so the complaint actually involves only the treatment up to this date. However, the evidence reveals that Irby submitted three sick call requests on May 3, 5, & 9, 2003, which were reviewed

by the nursing staff. He complained of pain and discomfort in his left foot, ankle and lower back. Dr. Cole was notified of his complaints, and he ordered x-rays of his left leg, ankle and foot on May 9, 2003. The x-rays, completed on May 13, 2003, indicated no abnormalities.

On May 15, 2003, Dr. Cole performed a follow-up examination, noting "moderately large venous varicosities ... but no localizing, neurological symptoms." Dr. Cole ordered continuation of the TED stockings, a 5-day course of a muscle relaxant and narcotic pain reliever (Vicodin), to be followed by a 30-day course of a non-steroidal anti-inflammatory medication (Naprosyn). No acute condition was identified by Dr. Cole.

The Plaintiff submitted six sick call requests from May 15, 2003, through August 5, 2003, related to complaints of left lower extremity swelling or pain. The nursing staff reviewed the requests and continued the Vicodin for ten additional days, June 1 through 10, 2003. Although Irby requested more narcotics, the request was refused. The records indicate that he was referred to Dr. Cole on July 7, 2003. Dr. Cole left his employment with EMCF shortly thereafter, and it is unclear whether or not he was treated on this date. In September, 2003, Irby was taken to the Rush Foundation Hospital and treated by Dr. Janet Price. He was pleased with her treatment and contends that she finally diagnosed him properly and gave him the proper treatment.

According to the Plaintiff, the correct diagnosis was that he has a condition wherein he has no lymphatic glands. Dr. Price discovered this problem at Rush Hospital by taking a doppler test. The proper treatment is to elevate his legs and to wear socks on his feet, but no TED hose. He requires no medication. The Plaintiff contends that this diagnosis should have been made much earlier.

The Plaintiff does not dispute the medical records except in the following manner. He contends that Dr. Cole would not issue him a "bottom-bunk profile" and he did not receive a bottom bunk until August 4, 2003. He also contends that he "was allowed" to suffer from the pain from June 26, 2002, until September 24, 2003. The Plaintiff contends that the TED stockings were not the proper treatment, as they stopped the blood from circulating in his legs, and caused his condition to worsen. Also, the Plaintiff alleges that on June 28, 2002, his foot burst in the shower, and that he was not given immediate medical treatment. He concedes he did receive treatment on July 1, 2002, but contends that he was placed in restraints and not given the proper treatment.

The Plaintiff's primary complaints are that Dr. Cole incorrectly diagnosed him, and because of this he suffered from unnecessary pain from June, 2002, until September, 2003. He contends that he should have been taken for outside treatment at the hospital at an earlier date, and that it was only because of financial concerns that he was not. The Plaintiff has put forth no

evidence supporting this assertion regarding the costs of care other than his conclusory statements. He has not provided any proof that Dr. Cole was motivated by monetary concerns or believed that his treatment was incorrect or insufficient in any way.

The undersigned has considered this motion by taking the Plaintiff's contentions as true: that Dr. Cole misdiagnosed him and that as a result the Plaintiff suffered pain that could have been avoided. Further, the treatment he was given for his condition was not proper. The Plaintiff does not contend that Dr. Cole *intentionally* misdiagnosed him or that he did not treat him. He simply contends that Dr. Cole *should* have sent him out for outside treatment at an earlier time; he did not because of the costs.

## **ANALYSIS OF THE APPLICABLE LAW TO THE FACTS IN PLAINTIFF'S CASE**

42 U.S.C. Section 1983 prohibits the deprivation of constitutional rights under color of state law. As the United States Supreme Court has taught, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment applies to the State of Mississippi and its agencies by virtue of the Due Process Clause of the Fourteenth Amendment, and it prohibits the infliction of cruel and unusual punishment for crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). The amendment's protection extends to prohibit deprivations that are not

7

specifically a part of a prison sentence, but are suffered as the result of imprisonment. *Id*. at 297, citing *Estelle v. Gamble*, 429 U.S. 97 (1976). The amendment requires prison officials to provide humane conditions of confinement, including adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

When a complaint involves conditions that are an element of confinement, as opposed to those that are a part of punishment, an inquiry must be made into the state of mind of the defendant prison officials. *Seiter*, 501 U.S. at 300-02. For such a claim to be viable, the official must exhibit "deliberate indifference" to the welfare of the inmate. *Id*. at 303. The elements of proof in a case involving conditions of confinement are twofold and include: (1) an objective component, under which the inmate must prove his exposure to a harm or injury that violates contemporaneous standards of decency; and (2) a subjective component, under which the inmate or pretrial detainee must prove that the prison authorities' current conduct evidences a deliberate indifference to that exposure. *Helling*, 509 U.S. at 35-36; *Hare*, 135 F.3d 327. In other words, under the objective component, the deprivation alleged must be "sufficiently serious," resulting in "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Id*. at 837. In defense, prison officials may show that they did not know of the indications of substantial danger and were, therefore, unaware of the danger, or that they knew the indications but believed that the risk involved was "insubstantial or nonexistent," or that they "responded reasonably to the risk, even if the harm ultimately was not adverted." *Id*. at 844-45.

Under the case law discussed above, the Defendants must have exposed the Plaintiff to a **substantial risk of serious harm** for liability to be found, according to the *Farmer* decision. Under the facts as alleged by the Plaintiff, and as evidenced through the medical records, the Plaintiff was never at risk for any serious harm. His legs were treated for cellulitis when needed; he simply was not pleased with the fact that narcotic pain medication was not continuously prescribed. The failure to provide pain medication on a continuous basis to a prisoner with varicose veins simply does not rise to a constitutional violation; no serious harm resulted. A review of the Plaintiff's medical records confirm that the Plaintiff received regular treatment, though not to his liking, and that he has no permanent serious injury as a result of his treatment. He was not placed at risk for serious harm by the failure to provide pain medication or by the treatment given. The TED hose may have been an incorrect treatment, and the undersigned assumes that they were. No serious harm resulted from wearing them.

The prison officials were merely negligent, at most, in not providing adequate pain medication or not properly diagnosing his condition or recommending the wrong treatment.  Negligent medical care does not constitute a valid section 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).  The Plaintiff was eventually taken to Rush Foundation Hospital in September, 2003, and treated by Dr. Janet Price.  He was given antibiotics and phisoderm soap for his infected legs.  He was told to wear socks and keep his legs elevated as much as possible.  He was pleased with this care provided [by MDOC] and contends that it should have been provided at an earlier date by Dr. Cole.  Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, *which results in substantial harm. Id.*, citing *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (delay must constitute "deliberate indifference"); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (delay must result in "substantial harm").

The Plaintiff cannot establish that Dr. Cole was indifferent to his illness, as he treated him regularly, as did the nursing staff; Dr. Cole simply did not provide the *correct* diagnosis or treatment, in the Plaintiff's opinion.  The medical records do not indicate that the Plaintiff was harmed by the delay, although he may have suffered from pain during the delayed period.  Deliberate indifference to a prisoner's **serious** medical needs may constitute an actionable

Eighth Amendment violation under §1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). These Defendants cannot be found to be "indifferent" because they have provided frequent and continuous treatment, albeit not completely successful. Further, the Plaintiff's condition cannot be considered **serious** under the circumstances of this case, where no permanent injury occurred.

Additionally, as the Fifth Circuit has stated, "[d]eliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). The facts in the Plaintiff's case confirm that no Defendant or Defendant's employee **intended** to inflict pain of any kind. The standard for finding "deliberate indifference" is a **subjective** inquiry, and the prisoner must show that the jail officials were **actually aware of the risk**, yet consciously disregarded or ignored it. *Farmer v. Brennan,* 511 U.S. 825, 837-839 (1994). Therefore, **actual knowledge and conscious disregard** of the risk of harm to the plaintiff is required before liability can be found. *Id.* Furthermore, deliberate indifference cannot be simply inferred from a prison official's mere failure to act reasonably, i.e., from negligence alone. *Lawson v. Dallas County*, 286 F.3d 257, 262-63 (2002), citing *Hare v. City of Corinth, MS*, 74 F.3d 633, 649 (5th Cir. 1996).

A prisoner is not entitled to the treatment that judges might prefer, or medical treatment or therapy equivalent to that provided by Medicaid or Medicare. *Ruiz v. Estelle*, 679 F.2d 1115, 1149 (5th Cir. 1982). Moreover, the Plaintiff has no constitutional right to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978). It was unfortunate that Irby was misdiagnosed and did not receive the appropriate medical care during this period of his incarceration. However, it simply does not violate the United States Constitution. No proof that costs were a concern can be established on the part of Dr. Cole. His treatment was reasonable under the circumstances of the Plaintiff's case.

The undersigned finds that no genuine issue of material fact exists in this case. The medical care provided met constitutional muster, and no Defendant intentionally withheld proper medical care from the Plaintiff.

### IV. Conclusion

For the above discussed reasons, it is the recommendation of the undersigned United States Magistrate Judge that the Defendants' Motion for Summary Judgment [#95] filed in the instant case be **granted**, that the complaint be dismissed with prejudice, and that Final Judgment in favor of the Defendants be entered.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this

report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §§636, *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

IT IS SO ORDERED, this the 9th day of August, 2006.


S/ James C. Sumner
UNITED STATES MAGISTRATE JUDGE